Submitted on record and brief September 24, accused suspended October 9, 1984

## In re Complaint as to the Conduct of
## WESLEY SCOTT BRIDGES,
*Accused.*

## (SC S30853)

688 P2d 1335

Dean Heiling, Roseburg, filed the brief for the Oregon State Bar.

PER CURIAM

## PER CURIAM

In this attorney discipline case the accused is charged with violating DR 6-101(A)(1), (2) and (3), DR 7-101(A)(1), (2) and (3), DR 1-102(A)(4) and ORS 9.480(4).[1]

DR 6-101(A)(1), (2) and (3) provide:

"(A)  A lawyer shall not:

"(1)  Handle a legal matter which he knows or should know that he is not competent to handle, without associating with him a lawyer who is competent to handle it.

"(2)  Handle a legal matter without preparation adequate in the circumstances.

"(3)  Neglect a legal matter entrusted to him."

DR 7-101(A)(1), (2) and (3) provide:

"(A)  A lawyer shall not intentionally:

"(1)  Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7-101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or by treating with courtesy and consideration all persons involved in the legal process.

"(2)  Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, Dr 5-102, and DR 5-105.

"(3)  Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B)."

DR 1-102(A)(4) provides:

"(A)  A lawyer shall not:

"* * * * *

---

[1] ORS 9.480(4) is now ORS 9.527(4).

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

ORS 9.480(4) provided at that time:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"* * * * *

"(4) The member is guilty of wilful deceit or misconduct in the legal profession."

The Oregon State Bar and the accused entered into a stipulated facts agreement. Pertinent parts of that agreement include the following portions of the complaint.

"III.

"James M. Watson was receiving social security disability benefits for six years. His case was reviewed by the Social Security Administration (SSA) and a determination was made that he was able to return to work. His benefits were discontinued. Because of that determination, Mr. Watson retained the Accused in May, 1982, to represent him in applying for a reinstatement and continuation of his benefits. The Accused wrote a letter to the local SSA office on Mr. Watson's behalf, but received no reply. The Accused then contacted the SSA office and learned that he was required to file an 'appointment of representation' form to officially notify SSA that he represented Mr. Watson. Mr. Watson obtained the form for the Accused, but the Accused failed to file it.

"IV.

"Mr. Watson's claim was subsequently denied and his benefits were discontinued in July, 1982. Mr. Watson then obtained the forms for reconsideration of the denial of his claim, filled them out at the Accused's office and sent them to the S.S.A. His claim was denied again.

"V.

"On or about September 29, 1982, after having obtained the forms required to request a formal hearing to contest the denial of his claim, Mr. Watson filled out the forms with the Accused's assistance and gave the completed forms to the Accused. The Accused assured Mr. Watson that he would file these forms with the S.S.A.'s Appeals Board in Eugene immediately. The Accused also assured Mr. Watson that he

would obtain Mr. Watson's medical records from the S.S.A. and any additional reports written by his doctors in July and August, 1982, in order to prepare for the appeal.

"VI.

"The Accused failed to communicate with Mr. Watson between September 29, 1982, and December 27, 1982, notwithstanding Mr. Watson's frequent phone calls to the Accused's office. When Mr. Watson was finally able to communicate with the Accused by telephone on December 27, 1982, Mr. Watson offered to contact the Appeals Board to inquire into the status of his case. The Accused assured Mr. Watson that he would contact the Appeals Board. The Accused knew at that time that he had not, in fact, filed an appeal on behalf of Mr. Watson.

"VII.

"When Mr. Watson attempted to contact the Accused about one week later, the Accused had taken a month's leave of absence and was unavailable. Mr. Watson then reviewed the Accused's file regarding his case and discovered the Accused had not used the signed medical releases to obtain information regarding his disability and had not corresponded with or requested additional reports from his doctors since June, 1982, even though the Accused previously had indicated he would do so. Mr. Watson also discovered that the Accused had failed to fill out social security forms related to his claim and that no record of the filing of his appeal by the Accused was in the Accused's file.

"VIII.

"On or about January 20, 1983, Mr. Watson contacted the Appeals Board and discovered that they had no record of any appeal having been filed on his behalf by the Accused. Mr. Watson contacted the S.S.A. and discovered that they also had no record of any appeal having been filed on his behalf by the Accused, had no record that the Accused represented him, and had no record that an 'appointment of representation' form had been filed by the Accused. Mr. Watson then retained a new attorney to file his appeal.

"IX.

"From September, 1982, until January, 1983, when Mr. Watson retained a new attorney, the Accused failed to notify the S.S.A. of his representation of Mr. Watson, failed to obtain additional medical information, failed to file an appeal on behalf of his client, and took no substantial steps towards

presenting the appeal of the denial of his client's claim to the S.S.A. Appeals Board, notwithstanding requests from his client to do so.

"\* \* \* \* \*

## "XII.

"The Accused told Mr. Watson not to contact the Appeals Board to check on the status of his appeal and indicated that he would make the inquiry for Mr. Watson, giving Mr. Watson the impression that he had filed the appeal as directed, when he knew that he had not done so.

"\* \* \* \* \*

## "XV.

"From July, 1982 until January, 1983, the Accused knew that Mr. Watson was not receiving Social Security benefits, but the Accused nonetheless failed to take any substantial steps towards attempting to reverse the denial of Mr. Watson's claim and to secure benefits on his behalf.

## "XVI.

"As a result, Mr. Watson was damaged by a delay in payment of, or complete loss of, social security benefits and was caused mental anguish.

"\* \* \* \* \*

## "XIX.

"At the time that he undertook to represent Mr. Watson, the Accused had never handled a Social Security claim and was relying on his secretary for guidance in determining how to handle his client's case.

## "XX.

"During the time the Accused handled Mr. Watson's case, he failed to properly educate himself as to the substantive and procedural aspects of handling Social Security claims. Having failed to do so, the Accused knew or should have known that he was not competent to handle such a case without associating with him an attorney competent to do so."

The Stipulated Facts also include the following:

"James M. Watson retained another attorney to represent him in his Social Security claim. The attorney was ultimately successful in requesting a hearing on the denial of Mr. Watson's claim. The matter is still pending, however, and the

SSA Appeals Board has not yet ruled on the merits of Mr. Watson's claim.

"At the time Mr. Bridges undertook to represent Mr. Watson, Mr. Bridges had no prior experience in Social Security claims. Mr. Bridges' secretary did have prior experience in an office that handled Social Security claims. She advised Mr. Bridges to take Mr. Watson's case because Social Security cases were easy. Mr. Bridges accepted the case, anticipating that he would rely on his secretary's experience and Mr. Watson's assistance."

The Trial Board made the following "Conclusions of Fact":

"A.   Lawyer accepted the Client's case at a time when Lawyer knew he was incompetent to handle it. Lawyer made no effort to associate a lawyer who was competent to handle the Client's matter.

"B.   Lawyer made no effort to educate himself as to the substantive or procedural aspects of handling the case. Lawyer totally failed to prepare the Client's claim. Lawyer completely neglected the legal matter being entrusted to him by Client. Lawyer's inadequate preparation and neglect of the Client's business was not a *[sic]* isolated incident, but was in fact a deliberate course of conduct under which a lawyer accepted the employment but thereafter sought to deceitfully cover up his lack of preparation, neglect and incompetency.

"C.   Lawyer's expectation of relying upon the experience and advice of his secretary in handling this type of legal matter was in itself a form of neglect of Client's business. Lawyer's expectation to rely upon his secretary in this matter constitutes no defense or extenuation.

"D.   Lawyer indulged in a course of conduct designed to deceitfully misrepresent to Client the status of the Client's case and to thereby cover up the Lawyer's total failure to pursue the Client's claim.

"E.   The Lawyer intentionally failed to carry out his contract of representation with Client.

"F.   It has not been proved by clear and convincing evidence that Lawyer had a specific intent to prejudice or damage the Client's interests. It has, however been proved by clear and convincing evidence that Lawyer acted in reckless disregard of whether there was prejudice or damage Client's interests."

The Trial Board concluded that the accused was

guilty of violation of DR 6-101(A)(1), (2) and (3), DR 7-101(A)(2) and DR 1-102(A)(4). The Trial Board observed that if DR 7-101(A)(3) requires specific intent the accused was not guilty of that violation, but if the Disciplinary Rule requires only reckless indifference he was guilty of the violation. The Trial Board also noted that DR 1-102(A)(4) is duplicative of ORS 9.480(4) and questioned whether it had the authority to invoke the statute. If it had the authority, the Board found the accused guilty of violating the statute also.

· The Trial Board observed that "the accused has not offered one word in defense of his license to practice law. [This] is, to us, both incredible and perhaps symptomatic of his problem." The Board recommended a suspension from the practice of law for no less than six months, and also recommended that the requirements governing a suspended lawyer's conduct as set out in *In re Kraus,* 295 Or 743, 751-53, 670 P2d 1012 (1983), be imposed. The Board also suggested that the accused be required "to prove, in some suitable way, when he applies for reinstatement that he has undergone such education or other activities, during the suspension, as will effect a change in professional attitude and conduct."

The Disciplinary Review Board concurred in the conclusions of the Trial Board as to all the violations, but recommended a 60 day suspension because it thought the six months suspension "excessive under the circumstances and considering past sanctions for similar violations."

■ We first consider two points raised by the Trial Board's opinion. With regard to the required mental state for a violation of DR 7-101(A)(3), we said in *In re Collier,* 295 Or 320, 328, 667 P2d 481 (1983), that " '[i]ntentionally' is a material and key element of DR 7-101(A)(3)." We concluded that negligently prejudicing and damaging a client does not rise to the level required by the Disciplinary Rule. Likewise, we conclude here that reckless indifference is not sufficient to find a lawyer guilty of violating DR 7-101(A)(3). Therefore, we find that the accused did not violate DR 7-101(A)(3).

■ The Trial Board also posed the question whether it had jurisdiction to find a violation of ORS 9.480(4). Bar proceedings relating to discipline are within the inherent power of this court to control. ORS 9.529. In accordance with that statute the Trial Board and Disciplinary Review Board

act as an arm of the court. Where a statute, as here, speaks specifically to the discipline of lawyers, the Trial Board and Disciplinary Review Board may consider whether there has been a violation of the statute. We agree with the Trial Board and the Disciplinary Review Board that the accused violated DR 1-102(A)(4). We also find that the accused is guilty of wilful deceit and misconduct in violation of ORS 9.480(4).

■　　　We agree with the Trial Board and the Disciplinary Review Board that the accused violated DR 6-101(A)(1), (2) and (3) and DR 7-101(A)(2).

■　　　In determining the proper sanction in this case we disagree with the Trial Board and the Oregon State Bar that some significance should be placed on the fact that the accused did not defend himself. Many discipline cases proceed on the basis of stipulated facts. If lawyers knew this would penalize them before the Trial Board, the Disciplinary Review Board or this court, stipulated facts proceedings would rarely, if ever, occur. We agree with the Disciplinary Review Board that the appropriate sanction is a 60 day suspension from the practice of law.

The accused is suspended from the practice of law for 60 days beginning November 1, 1984. The Oregon State Bar is awarded its costs and disbursements.