Submitted on the record October 14, accused disbarred November 17, 1994

# In re Complaint as to the Conduct of
# LEWIS M. KING, JR.
*Accused.*

## (OSB 92-172, 93-126; SC S40719)

883 P2d 1291

Lia Saroyan, Assistant Disciplinary Counsel, Lake Oswego, waived appearance for the Oregon State Bar.

No appearance *contra*.

PER CURIAM

## PER CURIAM

This is a lawyer disciplinary proceeding. The Oregon State Bar (Bar) charges that the accused misappropriated funds that were entrusted to him, thereby committing the crime of aggravated theft in the first degree, a Class B felony,[1] and violating DR 1-102(A)(2) and (3).[2] The Bar also charges that the accused knowingly neglected a client's case, in violation of DR 6-101(B).[3] A trial panel of the Disciplinary Board found the accused guilty of the charges and disbarred him. Review is automatic under BR 9.536(2). We review the record *de novo.* ORS 9.536(3). The Bar has the burden of establishing ethical misconduct by clear and convincing evidence. BR 5.2. We find the accused guilty as charged and disbar him.

## FINDINGS OF FACT

We note at the outset that the accused has made no appearance in this proceeding. On August 23, 1993, the Bar received a communication from the accused, in the form of a letter and tape recording, indicating that he had abandoned his law practice and his residence and had departed from the area. He left no forwarding address with anyone and made it

---

[1] ORS 164.057 provides:

"(1) A person commits the crime of aggravated theft in the first degree, if:

"(a) The person violates ORS 164.055 [theft in the first degree] * * *; and

"(b) The value of the property in a single or aggregate transaction is $10,000 or more.

"(2) Aggravated theft in the first degree is a Class B felony."

ORS 164.055 provides in part:

"(1) A person commits the crime of theft in the first degree if, by other than extortion, the person commits theft as defined in ORS 164.015 and:

"(a) The total value of the property in a single or aggregate transaction is $200 or more in a case of theft by receiving, and $750 or more in any other case[.]"

[2] DR 1-102(A)(2) and (3) provide:

"It is professional misconduct for a lawyer to:

"* * * * *

"(2) Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law;

"(3) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]"

[3] DR 6-101(B) provides:

"A lawyer shall not neglect a legal matter entrusted to the lawyer."

clear, in the tape to the Bar, that he did not want his whereabouts discovered. On the tape, the accused admits the wrongdoing detailed below. He states, for example:

> "I have taken money from a number of clients, approximately 5 or 6 that is still owed to them. I've taken money from a couple clients that I have paid back. * * *

> "* * * * *

> "There are many other clients that need help that I've neglected. * * *

> "* * * * *

> "* * * I've been very neglectful and the word dysfunctional or paralyzed I guess is what's used often * * *. But anyway I ignore[d] the files * * *."

In the letter, the accused also asserted that he had taken client funds for personal use while trying to rebuild his practice after having worked for a failed business.

We find that the Bar has proved the following facts by clear and convincing evidence: In 1993, the accused represented co-petitioners in the matter of a conservatorship involving one Ward. A court order allowed closure of the sale of real property belonging to Ward. The court ordered that the proceeds of the sale be frozen until the court decided whether to grant or deny a co-petition of co-conservators. The court further ordered that, during the intervening time, the proceeds of the sale be held by the accused in the form of a check or an interest-bearing bank account. On May 5, 1993, the accused came into possession of $11,691.68 in proceeds resulting from the sale of Ward's property. He appropriated that money for his own use, with the intent to deprive the owner thereof.

Also in 1993, the accused represented a client named Kehdi. He sold about $33,000 in stock belonging to that client. The accused appropriated the proceeds from the sale of the stock, with the intent to deprive the owner thereof.

During that same year, the accused represented a client named Hatch in a dissolution matter. During the course of that representation, $25,614.39 was tendered to the

accused for safekeeping, pending the outcome of the dissolution case. The accused appropriated that money, with the intent to deprive the owner thereof.

In 1989, the accused represented a client named Loupal with respect to the purchase of a home. Loupal had entered into a lease-option agreement. A term of the agreement was that the seller would obtain an FHA loan, which Loupal would assume. When the FHA loan was not obtained, Loupal retained the accused to assist her in the transaction.

The accused filed an action on Loupal's behalf, in Clackamas County Circuit Court, in September 1989. On January 11, 1990, the case was dismissed for want of prosecution. The accused failed to reinstate the action, and a Notice of Judgment of Dismissal was entered on May 22, 1990. In October 1990 and May 1991, the accused made unsuccessful efforts to have the action reinstated.

In August 1991, the accused filed a second action on Loupal's behalf. The complaint in the second action named the same defendants and made the same allegations as did the complaint in the first action. The defendants sought, and were granted, summary judgment in the second action. Loupal's second action was dismissed on March 30, 1992. She discharged the accused as her lawyer in May 1992.

From September 1989 through May 1992, the accused failed to prosecute Loupal's claim in a timely manner, failed to return telephone calls from Loupal and from opposing counsel in a timely manner, failed to maintain contact with the court so as to avoid dismissal, and failed to ensure that Loupal's claim was properly reinstated or refiled within the applicable statute of limitations.

## DISCUSSION

In connection with the Ward, Kehdi, and Hatch matters, the Bar presented clear and convincing evidence that the accused committed Class B felonies. ORS 164.057 and 164.055 (quoted *ante* at note 1). His conduct also plainly violated DR 1-102(A)(2) and (3), quoted *ante* at notes 2 and 3.

The accused neglected a client's case in the Loupal matter. His conduct plainly violated DR 6-101(B), which is quoted above.

## SANCTION

██ The usual methodology of this court at this point in cases of this kind is to review pertinent portions of the American Bar Association Standards for Imposing Lawyer Sanctions (1991). *See, e.g., In re Smith*, 316 Or 55, 61, 848 P2d 612 (1993) (illustrating methodology). However, the facts of this case are so compelling, the mitigating circumstances so minimal, and the appropriate sanction so obvious that we believe that it would serve no useful purpose to prolong our discussion. A lawyer who steals from the lawyer's clients usually will be disbarred.[4] In that regard, there is nothing unusual about this case.

The accused is disbarred.

---

[4] *See, e.g., In re Biggs*, 318 Or 281, 297, 864 P2d 1310 (1994) (where an accused misappropriated client monies and abandoned law practice without notifying clients, causing serious injury to clients, disbarment is proper sanction, despite claim of emotional difficulty); *In re Benjamin*, 312 Or 515, 521-24, 823 P2d 413 (1991) (where an accused neglected legal matters, failed to pay money to clients promptly, personally used some of that money, and failed to respond to initial inquiry from Bar, disbarment is proper sanction); *In re Phelps*, 306 Or 508, 520, 760 P2d 1331 (1988) (where an accused "steals funds from a client, the sanction is disbarment," despite mitigating circumstances).