Argued and submitted May 3; reassigned June 20, accused suspended for six months August 30, 2001

In re Complaint as to the Conduct of

# ADAM KIMMELL,
*Accused.*

## (OSB No. 98-82; SC S47464)

31 P3d 414

Adam Kimmell, *in propria persona*, Portland, argued the cause and submitted the brief.

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and submitted the brief for the Oregon State Bar.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, Riggs, and De Muniz, Justices.*

PER CURIAM

---

* Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case.

## PER CURIAM

In this lawyer discipline proceeding, the Oregon State Bar (Bar) charged the accused with violating two disciplinary rules of the Code of Professional Responsibility: Disciplinary Rule (DR) 1-102(A)(2) (prohibiting commission of "criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law"); and DR 1-102(A)(3) (prohibiting "engag[ing] in conduct involving dishonesty, fraud, deceit or misrepresentation"). The Bar also alleged that the accused violated ORS 9.527(1) (conduct justifying denial of Bar admission). A trial panel of the Disciplinary Board found that the accused violated only DR 1-102(A)(3) and suspended him from the practice of law for six months.

The Bar sought review of the trial panel's decision. ORS 9.536(1); Bar Rule of Procedure (BR) 10.3. This court reviews the record *de novo*. ORS 9.536(3); BR 10.6. The Bar has the burden of establishing alleged misconduct by clear and convincing evidence. BR 5.2. We hold that the accused violated DR 1-102(A)(2) and DR 1-102(A)(3), and suspend him from the practice of law for six months.

## I. FACTS

The accused first was admitted to the practice of law in New York in 1978. In 1985, he was admitted to practice in California. In New York and California, the accused's practice focused on business transactions. In 1991, the accused was admitted to the practice of law in Oregon. From 1991 to the present, he has had a solo practice primarily in the areas of personal injury and criminal law.

On September 28, 1997, the accused entered a department store, placed a jacket in a black shoulder bag that he was carrying, and left the store without paying for the jacket. After observing the accused's conduct via video surveillance, store personnel apprehended him outside the store. The accused objected to being detained and denied any wrongdoing. Even after the jacket was found in his bag with the department store tags still attached, the accused maintained that the jacket belonged to him. Police arrested the

accused and charged him with theft in the second degree. ORS 164.045.[1]

Theft in the second degree is a Class A misdemeanor. ORS 164.045(2). However, because the accused had no prior criminal convictions, the Multnomah County District Attorney's office elected to prosecute the offense as a violation. *Former* ORS 161.565(2) (1997), *repealed by* Or Laws 1999, ch 1051, § 49. The accused pleaded guilty to the offense, and the trial court imposed a $200 fine, $100 of which would be suspended if the accused attended an "anti-theft talk" within 90 days.

The Multnomah County District Attorney's Office notified the Bar of the accused's conviction and, in February 1999, the Bar filed a formal complaint against the accused. In his answer, the accused admitted that he had committed the alleged misconduct. However, he asserted that the Bar's complaint should be dismissed because his "conduct was prosecuted as a violation, and [*former*] ORS 161.565(4) [(1997)] provides that such a conviction 'does not give rise to any disability or legal disadvantage.' "

Before the trial panel, the accused conceded that he had committed theft and that his conduct was dishonest and intentional. He also testified that he had acted impulsively, that he was remorseful and that, although he previously had shoplifted as a child, he had learned from his most recent "mistake" and "never would do it again." In support of those contentions, the accused offered the testimony of Dr. True, a licensed psychologist. True opined that, even when viewed

[1] ORS 164.045 provides:

"(1) A person commits the crime of theft in the second degree if, by other than extortion, the person:

"(a) Commits theft as defined in ORS 164.015; and

"(b) The total value of the property in a single or aggregate transaction is $50 or more but is under $200 in a case of theft by receiving and under $750 in any other case."

ORS 164.015 provides, in part:

"A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:

"(1) Takes, appropriates, obtains or withholds such property from an owner thereof[.]"

together with the accused's childhood shoplifting incidents, the recent incident was not indicative of a pattern of criminal behavior. However, True acknowledged that, without additional treatment, there existed "at least some significant chance that * * * similar incidents could happen in the future." Dr. Scherr, a licensed psychologist who testified on the Bar's behalf, also opined that, without treatment, the accused is "susceptible to dishonest behavior."

As noted, the trial panel concluded that the accused's misconduct was dishonest, in violation of DR 1-102(A)(3). However, the trial panel concluded that, under *former* ORS 161.565(4) (1997), the accused could not be subject to discipline under either DR 1-102(A)(2) or ORS 9.527(1). Based on the DR 1-102(A)(3) violation, the trial panel imposed a six-month suspension and recommended that the accused's readmission be conditioned on proof that he successfully had completed counseling and had demonstrated that he was not likely to engage in similar dishonest conduct in the future.

## II. DISCUSSION

A. *Former ORS 161.565(4) (1997)*

■ We first address the accused's assertion that, because he pleaded guilty to a violation and not to a crime, *former* ORS 161.565(4) (1997) precludes lawyer discipline for the same conduct, *i.e.*, theft of the jacket. For the following reasons, we reject that argument.

*Former* ORS 161.565(4) (1997) provided:

> "Conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime."[2]

Under that statute, persons convicted of a violation are prohibited from suffering "any disability or legal disadvantage"

---

[2] Although the legislature repealed *former* ORS 161.565 (1997) in its entirety, Or Laws 1999, ch 1051, § 49, subsection (4) of that statute appears merely to have been renumbered. ORS 153.008(2) (1999) now provides:

> "Conviction of a violation does not give rise to any disability or legal disadvantage based on conviction of a crime."

Or Laws 1999, ch 1051, § 3.

that they would have suffered had they been convicted of a *crime*, as opposed to a *violation*.[3]

Assuming, without deciding, that a disciplinary sanction qualifies as either a "disability or legal disadvantage" under *former* ORS 161.565(4) (1997), that statute does not apply to this proceeding, because none of the charged violations in this disciplinary action is based on the accused's *conviction*. Proof of conviction is not required to find a violation of DR 1-102(A)(3) or ORS 9.527(1). Similarly, although DR 1-102(A)(2) requires the court to examine an alleged "criminal act," this court has held that proof that an accused lawyer was convicted for such an act is not required to find a violation of DR 1-102(A)(2). *In re Allen*, 326 Or 107, 120, 949 P2d 710 (1997). Because this disciplinary action is not based on the accused's conviction, but rather on the accused's conduct, *former* ORS 161.565(4) (1997) is not a defense to the violations alleged.

The accused argues, and the trial panel agreed, that this court's application of ORS 161.705 in *In re Sonderen*, 303 Or 129, 734 P2d 348 (1987), supports his contention that *former* ORS 161.565(4) (1997) precludes Bar discipline here.[4] The accused's reliance upon *Sonderen* is misplaced.

The court in *Sonderen* concluded that the accused lawyer was not subject to discipline under ORS 9.527(2) when a felony conviction later was reduced to a misdemeanor that was not a crime involving moral turpitude.[5] Unlike the violations at issue in this proceeding (DR 1-102(A)(2), DR 1-102(A)(3), and ORS 9.527(1)), discipline under ORS 9.527(2) depends on proof of a certain *type* of conviction. *See*

---

[3] Under the Criminal Code, a violation is not a "crime." *See* ORS 161.515(2) (defining "crime" as "either a felony or a misdemeanor"). "Violations" are distinguishable from "crimes" in that imprisonment may not be imposed for conviction of a violation, ORS 153.018(1), whereas imprisonment may be imposed for conviction of a crime, ORS 161.515(1).

[4] ORS 161.705 permits sentencing courts to reduce certain felonies to misdemeanors.

[5] ORS 9.527(2) provides that this court may discipline a lawyer if the lawyer

"has been convicted in any jurisdiction of an offense which is a misdemeanor involving moral turpitude or a felony under the laws of this state, or is punishable by death or imprisonment under the laws of the United States, in any of which cases the record of the conviction shall be conclusive evidence[.]"

*Allen*, 326 Or at 116 (ORS 9.527(2) authorizes court to discipline lawyers for conviction of only two types of criminal offenses—felonies and misdemeanors involving moral turpitude). As noted, the violations at issue here do not require proof of any conviction at all, much less any particular type of conviction. Thus, *Sonderen* provides no assistance to the accused.

In sum, we conclude that *former* ORS 161.565(4) (1997) is not a defense to the disciplinary violations alleged in this case. Consequently, if the Bar has established the alleged violations by clear and convincing evidence, *former* ORS 161.565(4) (1997) does not preclude this court from disciplining the accused.

We turn now to the alleged violations.

B. *DR 1-102(A)(2)*

DR 1-102(A)(2) provides that it is professional misconduct for a lawyer to "[c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law[.]" To find a violation of DR 1-102(A)(2), the court must determine whether: (1) the accused committed a criminal act; and (2) the act reflects adversely on the accused's honesty, trustworthiness, or fitness to practice law. *Allen*, 326 Or at 120.

The accused admits that he committed a criminal act, namely theft. The accused also acknowledges that his conduct was dishonest. On the basis of those concessions, we conclude that the Bar has proven that the accused violated DR 1-102(A)(2) by committing a criminal act that reflects adversely on his honesty.

C. *DR 1-102(A)(3)*

DR 1-102(A)(3) provides, in part, that it is professional misconduct for a lawyer to "[e]ngage in conduct involving dishonesty[.]" The accused concedes that his conduct was dishonest. Accordingly, we conclude that he violated DR 1-102(A)(3).

## D. *ORS 9.527(1)*

As noted, the Bar chose, in addition to the disciplinary rule violations, to charge the accused with a violation of ORS 9.527(1).[6] Although, in the past, this court has found that the same conduct can violate both the Code of Professional Responsibility and a provision of ORS chapter 9, *see, e.g., In re Gatti*, 330 Or 517, 8 P3d 966 (2000); *In re Allen*, 326 Or 107, 949 P2d 710 (1997); *In re Bridges*, 298 Or 53, 688 P2d 1335 (1984) (each so finding), such a finding generally has not served to enhance the sanction that this court has imposed for the violation or violations of the Code of Professional Responsibility. In this case, the Bar does not argue that a finding that the accused violated ORS 9.527(1), in addition to DR 1-102(A)(2) and DR 1-102(A)(3), for theft of the jacket would enhance the sanction that we would impose for the accused's violations of the disciplinary rules. We conclude that a finding that the accused violated ORS 9.527(1) would have no practical effect on the sanction that we impose in this case. Therefore, we decline to address the Bar's charge that the accused violated that statute.

Having found that the accused violated DR 1-102(A)(2) and DR 1-102(A)(3) when he committed theft in the second degree, we turn now to the question of sanction.

## III. SANCTION

This court's methodology in determining the appropriate sanction for violations of the disciplinary rules is well established. *See In re Jaffee*, 331 Or 398, 408, 15 P3d 533 (2000) (describing methodology). Consistent with that methodology, we refer to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended

---

[6] ORS 9.57 provides, in part:

"The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that:

"(1) The member has committed an act or carried on a course of conduct of such nature that, if the member were applying for admission to the bar, the application should be denied[.]"

1992) (ABA Standards) and to this court's case law for guidance in determining the appropriate sanction. In doing so, we are mindful that

> "[p]roceedings for the discipline of an attorney are not to punish the attorney for the commission of a crime. That matter is left to the criminal courts. The objects of the proceedings here are to uphold the dignity and respect of the profession, protect the courts, preserve the administration of justice and protect clients."

*In re Carstens*, 297 Or 155, 166, 683 P2d 992 (1984).

## A. *Duty Violated*

In this case, the accused violated his duty to the public to maintain standards of personal integrity. ABA Standard 5.1. As noted in the commentary to ABA Standard 5.0 at 36:

> "The most fundamental duty which a lawyer owes the public is the duty to maintain the standards of personal integrity upon which the community relies. The public expects the lawyer to be honest and to abide by the law; public confidence in the integrity of officers of the court is undermined when lawyers engage in illegal conduct."

## B. *Mental State*

The accused admits that he acted intentionally, that is, with the "conscious objective or purpose to accomplish a particular result." *See* ABA Standards at 17 (defining "intent").

## C. *Injury*

"Injury" includes actual or potential harm to a client, the public, the legal system, or the legal profession. ABA Standards at 6-7. As noted, the accused's conduct caused actual and potential harm to the department store from which he stole.

## D. *Preliminary Sanction*

The accused's conduct implicates several ABA Standards. Disbarment generally is appropriate when a lawyer: (1) engages in serious criminal conduct, such as a felony, and any lesser crime that includes theft as a necessary element; or (2) engages in any other intentional conduct involving dishonesty that "seriously adversely reflects on the lawyer's

fitness to practice" law. ABA Standards 5.11(a) and (b).[7] Suspension generally is appropriate when a lawyer knowingly engages in criminal conduct "that seriously adversely reflects on the lawyer's fitness to practice" law. ABA Standard 5.12.

Drawing together the duty violated, the accused's mental state, and the injury caused, our initial determination is that suspension or, possibly, disbarment is the appropriate sanction. We next consider any aggravating and mitigating factors, and this court's case law.

### E. *Aggravating and Mitigating Factors*

ABA Standard 9.22 identifies aggravating factors that may be relevant in a particular situation. Here, the accused has a prior disciplinary record. ABA Standard 9.22(a). After becoming an inactive member of the California Bar in 1992, the accused filed documents in California courts and continued to represent that he was admitted to practice law in California. Based on that misconduct, the accused was disciplined in Oregon in 1996 for violating DR 3-101(B) (prohibiting unlawful practice of law) and DR 2-101(A)(1) (prohibiting communications about lawyer that are materially misleading). Although the accused was sanctioned for those violations before he engaged in the misconduct at issue, their significance is lessened in this proceeding, because they involved misconduct different in kind from that at issue here and resulted only in a public reprimand. *See In re Jones*, 326 Or 195, 200, 951 P2d 149 (1997) (setting out nonexhaustive list of factors that serve to heighten or diminish significance of earlier misconduct). The accused also acted with a dishonest and selfish motive. ABA Standard 9.22(b).[8]

---

[7] The accused contends that his shoplifting should not be considered a "serious crime" for purposes of ABA Standard 5.11(a). The ABA Standards do not differentiate among degrees or kinds of thefts. The commentary to ABA Standard 5.11 provides:

"A lawyer who engages in any of the illegal acts listed [in ABA Standard 5.11(a)] has violated one of the most basic professional obligations to the public, the pledge to maintain personal honesty and integrity. This duty to the public is breached regardless of whether a criminal charge has been brought against the lawyer."

However, as demonstrated below, not all thefts merit disbarment.

[8] We note that the Bar asserts that other aggravating factors apply. However, we only discuss those that we find to be relevant.

Only one mitigating factor is present: The accused expressed remorse. ABA Standard 9.32(1).

F. *Case Law*

In determining the appropriate sanction, this court also examines the accused's conduct in the light of this court's prior case law. The accused contends that "not all thefts are equally 'serious' " and that, because his theft was an isolated act that did not arise "in a professional context," only a short suspension is warranted. The Bar disagrees. Relying on a footnote in *In re Pierson*, 280 Or 513, 517-18 n 1, 571 P2d 907 (1977), in which this court questioned the relevance of the distinction between theft from a client and theft from a non-client, the Bar submits that "theft is theft" and asks this court to disbar the accused.

Theft from a client is the most egregious form of theft that can be committed by a lawyer and generally warrants disbarment. *See, e.g., In re King*, 320 Or 354, 359, 883 P2d 1291 (1994) (so stating); *In re Phelps*, 306 Or 508, 520, 760 P2d 1331 (1988) (where an accused "steals funds from a client, the sanction is disbarment," despite mitigating circumstances); *Pierson*, 280 Or at 518 (single conversion of client funds will result in disbarment).

This court also has held that theft from someone other than a client may result in disbarment or a lengthy suspension. For example, in *In re Pennington*, 220 Or 343, 348 P2d 774 (1960), the court disbarred a lawyer who misappropriated partnership funds. In doing so, the court noted that violating a fiduciary duty owed to a partnership was "no less abhorrent" than violating a fiduciary duty owed to a client. Similarly, in *In re Murdock*, 328 Or 18, 968 P2d 1270 (1998), this court disbarred a lawyer who embezzled more than $9,000 from his law firm. In *In re Stodd*, 279 Or 565, 568 P2d 665 (1977), a lawyer was suspended for two years after he converted funds from a nonprofit organization of which he was president.

Other cases involving theft from someone other than a client have not resulted in disbarment or a lengthy suspension. In *In re Mahr*, 276 Or 939, 556 P2d 1359 (1976), this

court imposed a 90-day suspension on a lawyer who was convicted of second-degree theft after stealing a plug socket from a department store. In *In re Carstens*, 297 Or 155, 683 P2d 992 (1984), a lawyer who converted his wife's joint ownership interest in a vehicle received a public reprimand. In doing so, the court emphasized that the accused's poor judgment arose from his ongoing marital dissolution proceeding and that the act for which he was convicted was unlikely to recur. *Id.* at 167.

The foregoing discussion demonstrates that, historically, this court has been of the view that there is a distinction between lawyer theft that results in a violation of a fiduciary duty and lawyer theft that does not. In most instances, a lawyer who misappropriates property or funds while acting in a fiduciary capacity will be sanctioned more severely than a lawyer who misappropriate property or funds outside that capacity.[9]

Having made that distinction, and keeping in mind that the accused was not acting in a fiduciary capacity when he committed the theft at issue, we note that theft is, nevertheless, an act of "serious misconduct involving moral turpitude," *Mahr*, 276 Or at 943. In this proceeding, the accused admits that he committed theft, that the decision to commit theft "came easily" to him, that he acted intentionally, that his conduct was dishonest, and that he was "surprised" by how seriously the Bar took that misconduct. The accused's conduct demonstrates a disrespect for the law that he has taken an oath to uphold, calling into question that which is required of every lawyer—good moral character. *See In re Tobiga*, 310 Or 46, 51-52, 791 P2d 830 (1990) (admission statute requires showing of good moral character to protect public in their dealings with practitioners).

---

[9] *Black's Law Dictionary*, 625 (6th ed 1990), explains that one acts in a "fiduciary capacity"

"when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and necessitating great confidence and trust on the one part and a high degree of good faith on the other part."

Because this case involves aggravating factors, a more lengthy suspension than the 90-days imposed in *Mahr* is warranted. However, because this case does not involve the violation of a fiduciary duty, a suspension that is shorter than the two-year suspension imposed in *Stodd* is appropriate. Accordingly, we conclude that the accused's violations of DR 1-102(A)(2) and DR 1-102(A)(3) warrant a six-month suspension.

The accused is suspended from the practice of law for a period of six months, commencing 60 days from the date of filing of this decision.