Argued and submitted May 5, accused suspended for 18 months October 2, 2003

# In re Complaint as to the Conduct of

## MICHAEL McDONOUGH,
*Accused.*

### (OSB 00-20; SC S49503)

77 P3d 306

J. Michael Alexander, Salem, argued the cause and submitted the brief for the accused.

Martha M. Hicks, Assistant Disciplinary Counsel, Lake Oswego, filed the brief for the Oregon State Bar.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, De Muniz, and Balmer, Justices.*

PER CURIAM

---

* Kistler, J., did not participate in the consideration or decision of this case.

**PER CURIAM**

In this lawyer disciplinary proceeding, the Oregon State Bar (Bar) charged Michael L. McDonough (the accused) with violating Code of Professional Responsibility Disciplinary Rule (DR) 1-102(A)(2) (committing criminal act that reflects adversely upon lawyer's honesty, trustworthiness, or fitness to practice law) and with being subject to discipline under ORS 9.527(1) (conduct justifying denial of admission to Bar). A trial panel of the Disciplinary Board concluded that the accused was guilty of the alleged misconduct and imposed an 18-month suspension. Our review is automatic, ORS 9.536(2); BR 10.1, and *de novo*, ORS 9.536(3); BR 10.6. The Bar has the burden of establishing the alleged misconduct by clear and convincing evidence. BR 5.2. For the reasons that follow, we conclude that the accused violated DR 1-102(A)(2) and is subject to discipline under ORS 9.527(1). We also conclude that an 18-month suspension from the practice of law is the appropriate sanction for that misconduct.

The following facts are undisputed. In three separate incidents that occurred between 1983 and 1985, the accused twice committed the crime of Reckless Driving, a Class A misdemeanor, and twice committed the crime of Driving Under the Influence of Intoxicants (DUII), also a Class A misdemeanor.

In 1994, the accused again was charged with the crime of DUII, for which he ultimately was convicted in 1996. The accused unsuccessfully appealed his conviction, and, in January 1998, he was fined and sentenced to 30 days in jail (with 28 days suspended), he was placed on probation for 12 months, and his driver license was suspended for one year. Nine months later, in September and early October of 1998, the accused was charged with Driving While Suspended, a Class A misdemeanor, on three separate occasions.

On October 11, 1998, the accused and his then-girlfriend, Wardell, spent an evening drinking heavily at a tavern in Salem. Although the accused knew that Wardell was intoxicated, he allowed her to drive when they left the tavern. Wardell drove to Interstate 5, and, on the freeway entrance ramp, the accused and Wardell became engaged in

a physical struggle. The accused ultimately pulled Wardell out of the vehicle by her hair and ordered her to get into the passenger seat of the vehicle. When Wardell refused, the accused started to drive, and Wardell jumped on the hood of the vehicle. The accused continued to drive onto the freeway and then attempted to throw Wardell off the vehicle by hitting his brakes. After he had driven approximately a quarter of a mile with Wardell still clinging to the hood of the vehicle, a state police trooper stopped and arrested the accused. The accused registered a blood alcohol level of 0.14, and he was charged with Driving While Suspended, DUII, Assault in the Fourth Degree, Recklessly Endangering Another Person, and Reckless Driving. Wardell suffered minor injuries from the incident.

From the charges from that incident on October, 11, 1998, together with the accused's three prior 1998 Driving While Suspended charges, the accused ultimately was convicted of two counts of Driving While Suspended, one count of DUII, and one count of Recklessly Endangering Another Person. For those convictions, in February 1999, the accused was fined and sentenced to 12 days in jail, he was placed on probation for 24 months, and his driver license was suspended for three years.

Six months later, in August 1999, the accused again was charged with the crime of Driving While Suspended, for which he was convicted in December 1999. For that conviction, the accused was sentenced to 180 days in jail (with 150 days suspended).

Finally, on January 24, 2001, and on September 5, 2001, the accused again was charged with Driving While Suspended. Both those charges subsequently were dismissed.

In October 2001, the Bar filed a Second Amended Formal Complaint, alleging that the accused had violated DR 1-102(A)(2) and was subject to discipline under ORS 9.527(1) because he had committed the following criminal acts:

"1.    In 1983, Reckless Driving, a Class A Misdemeanor;

"2.    In 1984, Driving Under the Influence of Intoxicants and Reckless Driving, Class A Misdemeanors;

"3.   On August 19, 1985, Driving Under the Influence of Intoxicants, a Class A Misdemeanor;

"4.   On December 27, 1994, Driving Under the Influence of Intoxicants, a Class A Misdemeanor;

"5.   On September 22, 1998, Driving While Suspended, a Class A Misdemeanor;

"6.   On September 30, 1998, Driving While Suspended, a Class A Misdemeanor;

"7.   On October 6, 1998, Driving While Suspended, a Class A Misdemeanor;

"8.   On October 11, 1998, Driving While Suspended/ Revoked, a Class A Misdemeanor;

"9.   On October 11, 1998, Driving Under the Influence of Intoxicants, a Class A Misdemeanor;

"10.   On October 11, 1998, Recklessly Endangering Another, a Class A Misdemeanor;

"11.   On October 11, 1998, Assault IV, a Class A Misdemeanor;

"12.   On October 11, 1998, Reckless Driving, a Class A Misdemeanor;

"13.   August 12, 1999, a violation of probation;

"14.   On August 12, 1999, Driving While Suspended, a Class A Misdemeanor;

"15.   On January 24, 2001, Driving While Suspended, a Class A Misdemeanor;

"16.   On September 5, 2001, Driving While Suspended, a Class A Misdemeanor."

At the disciplinary hearing in January 2002, the trial panel determined that the accused had committed all the alleged criminal acts and that, in doing so, had violated DR 1-102(A)(2) and was subject to discipline under ORS 9.527(1). As noted, for that misconduct, the trial panel suspended the accused from the practice of law for a period of 18 months.

On review, the accused admits to all the criminal conduct that the Bar alleges, except the two allegations of

Driving While Suspended on January 24, 2001, and on September 5, 2001 (acts 15 and 16 in the Bar's Second Amended Formal Complaint). He disputes, however, that his criminal acts constitute a violation of DR 1-102(A)(2) or cause him to be subject to discipline under ORS 9.527(1). He also contends that, in any event, the 18-month suspension that the trial panel imposed is an excessive sanction.

■ From our review of the record, we agree with the accused that the Bar has failed to establish by clear and convincing evidence that the accused was guilty of Driving While Suspended in January and September of 2001. We accept the accused's admission as to the truth of the other alleged criminal acts. On *de novo* review, we now must determine whether, by engaging in such criminal conduct, the accused violated DR 1-102(A)(2) and is subject to discipline under ORS 9.527(1) and, if so, the appropriate sanction for that misconduct.

DR 1-102(A)(2) provides:

"It is professional misconduct for a lawyer to * * * [c]ommit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law[.]"

As noted, the accused here admits to committing the following Class A misdemeanors: (1) four acts of DUII, ORS 813.010; (2) five acts of Driving While Suspended, ORS 811.182; (3) three acts of Reckless Driving, ORS 811.140; (4) one act of Assault in the Fourth Degree, ORS 163.160; and (5) one act of Recklessly Endangering Another Person, ORS 163.195. He also admits to a probation violation. In light of those admissions, the focus of our inquiry under DR 1-102(A)(2) is whether the accused's criminal acts reflect adversely upon his "honesty, trustworthiness or fitness to practice law[.]"

The Bar does not contend that the criminal acts at issue raise doubts as to the accused's honesty or trustworthiness; rather, the Bar contends that those acts reflect adversely upon the accused's fitness to practice law. In *In re White*, 311 Or 573, 589, 815 P2d 1257 (1991), this court explained that, for a criminal act to reflect adversely upon an accused lawyer's fitness to practice law within the meaning of

DR 1-102(A)(2), a rational connection must exist between the criminal conduct and the accused lawyer's fitness to practice law aside from the fact of the criminality of the act alone. The court in *White* identified a number of factors that this court considers in making that determination, including:

> "the lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct."

*Id.*

Applying those factors here, we agree with the Bar that the accused's criminal acts reflect adversely upon his fitness to practice law. The accused knew that the law prohibited him from driving while he was intoxicated and while his license was suspended; however, despite that knowledge and despite criminal sanctions that he had received for such conduct, the accused nevertheless repeatedly chose to drive in violation of those laws. Based upon those facts, we conclude that the accused's repeated criminal offenses were intentional and demonstrated a substantial disrespect for the law. *See In re Lawrence*, 332 Or 502, 510, 31 P3d 1078 (2001) (when accused lawyer knew of duty to file tax returns timely, his repeated failure to do so was intentional and reflected disrespect for law). In addition, every time that he chose to drive while intoxicated, the accused risked serious bodily injury to others, and, on October 11, 1998, he in fact caused bodily injury to Wardell. Finally, the accused's multiple acts of driving while intoxicated and while his license was suspended reveal a pattern of criminal conduct. The accused is guilty of violating DR 1-102(A)(2).

■      The Bar also alleges that, by committing the above criminal acts, the accused is subject to discipline under this court's authority set out in ORS 9.527(1), which provides:

> "The Supreme Court may disbar, suspend or reprimand a member of the bar whenever, upon proper proceedings for that purpose, it appears to the court that * * * [t]he member has committed an act or carried on a course of conduct of such nature that, if the member were applying for admission to the bar, the application should be denied[.]"

ORS 9.220 provides, in part:

"An applicant for admission as attorney must * * * show that the applicant * * * [i]s a person of good moral character and fit to practice law. * * * For purposes of this section[,] * * * the lack of 'good moral character' may be established by reference to acts or conduct that reflect moral turpitude or to acts or conduct which would cause a reasonable person to have substantial doubts about the individual's honesty, fairness and respect for the rights of others and for the laws of the state and the nation. The conduct or acts in question should be rationally connected to the applicant's fitness to practice law."

As discussed above, the accused's criminal conduct, particularly his refusal to abide by sanctions imposed for that conduct, reflects a substantial disrespect for the law and rationally is connected to the question of his fitness to practice law. Because such conduct would cause us to deny the accused's admission if he were an applicant to the Bar, we conclude that the accused also is subject to discipline under ORS 9.527(1). *See In re Rowell*, 305 Or 584, 586-88, 754 P2d 905 (1988) (applicant's criminal activity demonstrated lack of requisite moral character for admission to Bar at time of conduct).[1]

Having concluded that the accused is guilty of violating DR 1-102(A)(2) and is subject to discipline under ORS 9.527(1), we now must determine the appropriate sanction. In doing so, we follow this court's well-established methodology by referring to the American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) and to this court's case law for guidance. *See, e.g., In re Kimmell*, 332 Or 480, 487-88, 31 P3d 414 (2001) (describing methodology).

---

[1] Although we conclude that the accused is subject to discipline under ORS 9.527(1), that finding does not enhance the sanction for the accused's misconduct in light of our determination that the accused's conduct also constituted a violation of DR 1-102(A)(2). *See In re Kimmell*, 332 Or 480, 487, 31 P3d 414 (2001) (noting that this court's finding that same conduct violated both Code of Professional Responsibility and provision of ORS chapter 9 generally has not served to enhance sanction).

■ Under the ABA Standards, we first make a preliminary determination of the appropriate sanction by considering the duty that the accused violated, the accused's mental state, and the injury that the accused's misconduct caused. ABA Standard 3.0. In this case, the accused violated his duty to the public to maintain his personal integrity when he engaged in repeated acts of unlawful conduct. ABA Standard 5.1; *see Kimmell*, 332 Or at 488 (accused lawyer violated duty to maintain personal integrity by engaging in illegal conduct). As previously noted, the accused's conduct here was intentional, and he caused actual injury to Wardell on October 11, 1998, and potential injury to the public every time that he drove while intoxicated. Moreover, when he repeatedly chose to drive after his driver license was suspended for his crimes of driving while intoxicated, the accused caused actual injury to the legal system by undermining the orders that had suspended his driving privileges and by demonstrating an indifference to the law. The accused's criminal offenses also caused potential injury to the legal profession by damaging the public's confidence in lawyers. The preliminary sanction under the ABA Standards for such conduct is a suspension from the practice of law. ABA Standard 5.12.

■ We next consider the existence of any aggravating or mitigating circumstances that may affect the degree of the sanction to be imposed. ABA Standard 3.0. In this proceeding, we find several aggravating factors. When he drove after his driver license had been suspended, the accused acted with a selfish motive, that is, to serve his own personal convenience. ABA Standard 9.22(b). The accused also engaged in a pattern of misconduct by repeatedly committing multiple criminal offenses. ABA Standard 9.22(c). In addition, the accused has substantial experience in the practice of law, having been admitted to the Bar in 1976. ABA Standard 9.22(i). Finally, we agree with the trial panel that the accused has failed to appreciate the seriousness of his misconduct. ABA Standard 9.22(g).

■ In mitigation, we first note that chemical dependency, including alcoholism, can operate as a mitigating factor when the accused lawyer shows that (1) there is medical evidence that such a dependency exists; (2) the dependency

caused the misconduct; (3) the accused lawyer has accomplished a meaningful and sustained period of recovery from such dependency; and (4) the recovery arrested the misconduct, and recurrence of the misconduct is unlikely. ABA Standard 9.32(i) (amended 1992); *see In re Murdock*, 328 Or 18, 29-30, 968 P2d 1270 (1998) (discussing those factors). In this proceeding, we determine that the accused has provided medical evidence that he suffers from alcoholism. However, because a number of the accused's criminal acts involved no use of alcohol at all, we cannot say that the accused's struggle with alcoholism caused all his misconduct. In addition, although the accused declares that he now recognizes the need for treatment of his alcoholism, the accused has not established that he has accomplished a meaningful and sustained recovery from his alcohol dependency. We therefore conclude that the mitigating factor of chemical dependency is inapplicable to this proceeding.[2]

■     We find the existence of several other mitigating factors. The accused has no prior disciplinary record, ABA Standard 9.32(a), and he introduced evidence that he has a reputation for honesty in the legal community, ABA Standard 9.32(g). The accused also cooperated during the disciplinary proceeding, ABA Standard 9.32(e), and other penalties have been imposed against the accused in the form of criminal sanctions, ABA Standard 9.32(k). In addition, in determining the appropriate sanction for the accused's misconduct, we place diminished weight upon the accused's criminal acts that occurred in 1983, 1984, and 1985, because of the lengthy delay between the time that the accused committed those criminal offenses and the Bar's pursuit of disciplinary proceedings. *See* ABA Standard 9.32(j) (amended 1992) (delay in disciplinary proceedings is mitigating factor).

---

[2] On review, the accused argues that the trial panel erred by admitting the testimony of a number of witnesses whose testimony related to the accused's use of alcohol and his compliance with alcohol treatment because, according to the accused, that testimony was not relevant to any issue in the disciplinary proceeding. *See* BR 5.1(a) (trial panel should exclude irrelevant evidence in disciplinary hearing). We disagree. Although that testimony was not relevant to the issue whether the accused had committed the alleged misconduct, that evidence was relevant to the issue of the appropriate sanction and, particularly, the existence of the mitigating factor of chemical dependency. The trial panel did not err by admitting that evidence.

We now turn to a consideration of the appropriate sanction in light of this court's case law. The accused argues that this court should craft a sanction to address the accused's alcohol dependency by imposing a period of probation with the condition that the accused participate in alcohol treatment. The Bar disagrees and contends that the 18-month suspension that the trial panel imposed is the appropriate sanction.

■ In considering the appropriate sanction for disciplinary violations involving criminal conduct, this court previously has observed that

> "[p]roceedings for the discipline of an attorney are not to punish the attorney for the commission of a crime. That matter is left to the criminal courts. The objects of the proceedings here are to uphold the dignity and respect of the profession, protect the courts, preserve the administration of justice and protect clients."

*In re Carstens*, 297 Or 155, 166, 683 P2d 992 (1984); *see also Kimmell*, 332 Or at 488 (same).

To protect the public and to uphold the respect of the legal profession, this court's case law demonstrates that disbarment or a lengthy suspension generally is appropriate when a lawyer intentionally has committed criminal acts in violation of DR 1-102(A)(2). *See, e.g.*, *In re Davenport*, 334 Or 298, 49 P3d 91, *modified and adh'd to on recons*, 335 Or 67, 57 P3d 897 (2002) (accused lawyer suspended for two years for false statements under oath in violation of DR 1-102(A)(2), among other violations); *In re Albrecht*, 333 Or 520, 42 P3d 887 (2002) (accused lawyer disbarred for participation in criminal money laundering scheme in violation of DR 1-102(A)(2), among other violations); *In re Gustafson*, 333 Or 468, 41 P3d 1063 (2002) (accused lawyer disbarred for false testimony under oath and violating juvenile expungement order in violation of DR 1-102(A)(2), among other violations); *In re Kirkman*, 313 Or 181, 830 P2d 206 (1992) (accused lawyer disbarred for forgery, false declaration, and bigamy in violation of DR 1-102(A)(2) and (3)).

In *Kimmell*, 332 Or 480, this court imposed a six-month suspension upon an accused lawyer who had committed a single act of second-degree theft. In imposing that

sanction, the court stated that it considered theft, even theft that did not involve a violation of a fiduciary duty, to be a serious act of misconduct that demonstrated a disrespect for the law. *Id.* at 491. The court further noted that, in that case, the accused lawyer had acted intentionally and that multiple aggravating factors, but only one mitigating factor, applied. *Id.* at 488-90.

In *In re Allen*, 326 Or 107, 949 P2d 710 (1997), this court imposed a one-year suspension upon an accused lawyer who had committed criminal acts of attempted possession of a controlled substance and aiding and abetting another in the commission of a crime. In doing so, the court emphasized that it was convinced that the accused lawyer's misconduct was an aberration that was inconsistent with the accused lawyer's general good character and that similar misconduct was unlikely to reoccur. *Id.* at 130. The court also stressed that, in that case, the mitigating factors substantially outweighed the aggravating factors. *Id.* Nevertheless, in light of the seriousness of his criminal conduct and, particularly, the fact that the accused lawyer's misconduct had contributed to the death of another person, the court concluded that a lengthy suspension was warranted. *Id.* at 130-31.

Unlike the accused lawyers either in *Kimmell* or in *Allen*, the accused here engaged in criminal conduct time and time again. The accused's repeated criminal acts and, particularly, his refusal to abide by sanctions imposed for his criminal conduct, reflect a substantial disrespect for the law. In addition, although his misconduct here did not culminate in such serious consequences to others as did the accused lawyer's misconduct in *Allen*, the accused's conduct on October 11, 1998, risked serious bodily harm to Wardell, and, every time that he chose to drive while intoxicated, the accused risked serious harm to the public. Unlike the accused lawyer in *Allen*, the accused also acted with a selfish motive, that is, to avoid his own personal inconvenience, when he repeatedly drove when his driver license was suspended. In addition, as noted, we agree with the trial panel that the accused has failed to appreciate the seriousness of his misconduct.

Although a number of mitigating factors also apply in this proceeding, we find that the above-listed aggravating

factors outweigh those mitigating factors. The accused's repeated criminal acts persuade us that the accused presently lacks good moral character and fitness to practice law. We agree with the trial panel that the appropriate sanction is a suspension from the practice of law for a period of 18 months.

The accused is suspended from the practice of law for a period of 18 months, effective 60 days from the filing of this decision.