Argued and submitted May 3, accused suspended for 60 days September 13, 2001

In re Complaint as to the Conduct of

## J. MARK LAWRENCE,
*Accused.*

(OSB 95-249, 97-123; SC S46876)

31 P3d 1078

Paula J. Lawrence, Lawrence & Houser, P.C., McMinville, argued the cause and filed the brief for the accused.

Mary A. Cooper, Assistant Disciplinary Counsel, Lake Oswego, argued the cause and filed the briefs for the Oregon State Bar.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, Riggs, and De Muniz, Justices.*

PER CURIAM

---

* Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case.

## PER CURIAM

In this lawyer discipline proceeding, the Oregon State Bar (Bar) charged the accused with violating various disciplinary rules of the Code of Professional Responsibility and with violating one statute. The trial panel found that the accused violated Disciplinary Rule (DR) 5-101(A)(1) (continuing employment without full disclosure when exercise of judgment on behalf of client is or may be affected by business, property, or personal interests), dismissed the other charges, and reprimanded him. The Bar and the accused both sought review in this court. ORS 9.536(1); Bar Rules of Procedure (BR) 10.1 and BR 10.3. In addition to the DR 5-101(A)(1) violation, the Bar continues to allege that the accused violated DR 1-102(A)(2) (committing criminal act reflecting adversely on lawyer's honesty, trustworthiness, or fitness to practice law) and ORS 9.460(1) (failing to support constitution and laws of the United States and this state) when he failed to timely file state and federal tax returns.[1]

We consider the matter *de novo* and may adopt, modify, or reject the decision of the trial panel. ORS 9.536(3); BR 10.6. The Bar has the burden of establishing alleged misconduct by clear and convincing evidence. BR 5.2. For the reasons that follow, we find that the accused violated DR 1-102(A)(2) and DR 5-101(A)(1), and that a 60-day suspension is the appropriate sanction.

## I. FACTS

We find the following facts by clear and convincing evidence. The accused has been a member of the Bar since 1989. After he was admitted to practice, the accused worked as a deputy district attorney until 1992. In 1992, the accused opened his own law office as a sole practitioner. His practice was not lucrative financially, and he entrusted the bookkeeping for his law practice to his mother, Hohman, who lives in Colorado. Hohman is not a licensed tax preparer, and the accused did not pay her for her bookkeeping services. The accused sent Hohman the original documents she needed to

---

[1] The Bar does not seek review of the trial panel's dismissal of the second, third, and fifth causes of complaint.

keep the books for the accused's law practice. The accused did not retain photocopies of the documents for purposes of preparing his tax returns, and he did not expect Hohman to prepare the tax returns for him.

In early 1993, the accused called Hohman, asking her to send him the documents he needed to file his 1992 tax returns. Hohman had not yet completed the accused's bookkeeping for that year, but she told the accused not to worry about his taxes because she guessed that he had not made enough money to owe taxes that year. The accused received an extension of time until August 1993 to file his 1992 tax returns, but he failed to file his 1992 tax returns by that deadline. Hohman did not return any records that the accused had requested in 1993.

Hohman eventually told the accused that she planned to finish the accused's bookkeeping records for 1992 and 1993 by April 1994. However, in early 1994, Hohman's computer failed, and she was unable to recover any information from it. At that time, Hohman was working full time as a bookkeeper for three business customers who were paying clients. The accused's bookkeeping was her lowest priority while she reconstructed the files she had lost when her computer failed.

The accused called Hohman a number of times in 1994, asking her to return to him the records he had sent to her. The accused explained to Hohman that he needed to file his tax returns. The accused thereafter missed the April 15, 1994, filing deadline for his 1993 taxes. Late in October 1994, the accused stopped sending Hohman his business records because "it was not working." Hohman again promised to send the accused his business records in time for him to file his tax returns for 1992, 1993, and 1994 by April 15, 1995. However, by early April 1995, Hohman had returned only some of the accused's records.

On or about April 1, 1995, the accused gave what records he had to his licensed tax preparer. Thereafter, the tax preparer told the accused that much of the documentation he needed to prepare the accused's tax returns was missing. The accused again called Hohman, asking her to find and return the missing records. Hohman told the accused that

she thought she had sent him everything. The accused thereafter received an extension until October 1995 to file his 1994 tax returns, but he missed that filing deadline. In late 1995, the accused's sister found the missing records in a storage unit that Hohman had rented. When the accused received the records, he gave them to his tax preparer.

In January 1996, the tax preparer completed the accused's tax returns for 1992, 1993, and 1994. The accused paid all taxes due, as well as late fees and accumulated interest for those years. The Internal Revenue Service and the Oregon Department of Revenue took no criminal action against the accused for his untimely filings.

The tardy filings came to the attention of the Bar after the accused testified under oath at a judgment debtor examination in September 1995 that he had not filed any state or federal tax returns for the years 1992, 1993, or 1994. The debtor examination had arisen out of the accused's representation of Rabon in a dissolution matter that forms the basis of one of the Bar's complaints against the accused. In representing Rabon, the accused failed to file a timely response, and the trial court entered a default judgment against Rabon. The accused moved to set aside the default and arranged for another lawyer, Houser, to represent Rabon. The trial court denied the motion to set aside the default judgment. Houser thereafter told both the accused and Rabon that, in his opinion, Rabon had a viable legal malpractice claim against the accused for having allowed the default judgment to be taken.

The accused continued to represent Rabon for several months on child support and visitation matters, without making full written disclosure to Rabon of the possibility that his own interests in avoiding a malpractice claim might affect his professional judgment. However, the accused did obtain a written release from Rabon providing that the accused would continue to handle Rabon's dissolution and child support matters for no fee in exchange for Rabon's giving up any malpractice claim. The trial court thereafter denied contempt and support modification motions that the accused had filed on Rabon's behalf and imposed sanctions on the accused and Rabon jointly and severally, in the amount of $1,500. When

the accused did not pay the sanction, opposing counsel filed the judgment debtor examination against the accused. It was during that examination that the accused disclosed that he had not filed tax returns for 1992, 1993, and 1994.

On December 14, 1995, the State Professional Responsibility Board referred both the Rabon and tax matters to the Local Professional Responsibility Committee for investigation. The Bar filed its first formal complaint against the accused on March 4, 1997, more than a year after the accused had paid all back taxes, penalties, and interest. The Bar amended its complaint twice, and the charges were not heard until January 26 and 27, 1999. The trial panel issued its decision on August 16, 1999, which, as noted, found the accused had violated DR 5-101(A)(1) and imposed a public reprimand.

## II. ALLEGED VIOLATIONS

A. *DR 1-102(A)(2)*

In its first cause of complaint, the Bar alleges that the accused "knowingly and willfully" failed to file personal tax returns timely for the years 1992, 1993, 1994, thereby violating DR 1-102(A)(2). That rule provides:

"It is professional misconduct for a lawyer to:

"* * * * *

"(2)   Commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness to practice law[.]"

To find a violation of DR 1-102(A)(2), the Bar must present clear and convincing evidence that the accused committed a criminal act and that the act reflects adversely on the accused's honesty, trustworthiness, or fitness to practice law. *In re Hassenstab*, 325 Or 166, 175-76, 934 P2d 1110 (1997). We may examine any evidence in the record that is relevant to that question. *In re Allen*, 326 Or 107, 121, 949 P2d 710 (1997). Proof of a conviction is not required to establish a violation of the disciplinary rule. *In re Kimmell*, 332 Or 480, 485, 31 P3d 414 (2001).

The Bar contends that the accused's failure to timely file 1992, 1993, and 1994 federal and state tax returns violated, respectively, two criminal statutes: 26 USC § 7203 and ORS 314.075(1). The federal statute, 26 USC § 7203, provides, in part:

> "Any person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who *willfully fails to* pay such estimated tax or tax, *make such return,* keep such records, or supply such information, *at the time or times required by law or regulations,* shall, in addition to other penalties provided by law, be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $25,000 ($100,000 in the case of a corporation), or imprisoned not more than 1 year, or both, together with the costs of prosecution. * * *"

(Emphasis added.) The Oregon statute, ORS 314.075, provides, in part:

> "*No person,* or officer or employee of a corporation or a member or employee of a partnership, shall, *with intent to evade any requirement of any law imposing taxes upon or measured by net income or any lawful requirement of the Department of Revenue thereunder*:
>
> "(1)   Fail to pay any tax *or to make, sign or verify any return* or to supply any information required[.]"

(Emphasis added.)

Both statutes generally make it a crime not to file tax returns at the time or times required by law. Violation of the federal statute is a misdemeanor, while violation of the Oregon statute is a Class C felony. 26 USC § 7203; ORS 314.991. The accused contends that the Bar failed to prove by clear and convincing evidence that his failure to file his tax returns timely was "willful" under 26 USC § 7203 or that he acted with the "intent to evade" the requirements of the law under ORS 314.075. According to the accused, he failed to file his tax returns in a timely manner because he was unaware that it was a crime to file untimely tax returns and because, under the circumstances, it was impossible for him to file any

sooner. Accordingly, the accused maintains, the Bar did not show that he was guilty of a criminal act.

As the term is used in 26 USC § 7203, "willful" means a "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 US 192, 201, 111 S Ct 604, 112 L Ed 2d 617 (1991). A willful violation is established by evidence of a deliberate intent to disobey the filing requirement. Proof of an evil motive or bad faith is not a required element of willful failure to file tax returns under 26 USC § 7203. *Id.* at 200-01. Moreover, a taxpayer's intent to report income and pay tax on it sometime in the future "does not vitiate the willfulness required by § 7203." *Samsone v. United States*, 380 US 343, 354, 85 S Ct 1004, 13 L Ed 2d 882 (1965).

In this proceeding, the accused admits that he failed to file his tax returns for 1992, 1993, and 1994 in a timely manner and that he was aware of his duty to do so. The accused testified that he knew that April 15 is the statutory deadline for filing tax returns. Moreover, the accused filed for extensions of time in which to file his 1992 and 1994 returns, but then he failed to file his returns by the extended deadlines. In short, the accused knew that his conduct was unlawful. The accused's assertion that he did not know that it was a crime to fail to file tax returns at the time or times required by law is not a defense to the charge that his failure to do so was willful.

It is true that the United States Supreme Court has held that a taxpayer may not be convicted of willful failure to file a tax return if the taxpayer subjectively misunderstood the tax laws or if the taxpayer was ignorant of the tax laws. *Cheek*, 498 US at 202. That holding does not aid the accused here. The accused does not argue that he misunderstood the tax laws or that he did not know of his legal duty to file his tax returns in a timely manner. Rather, the accused's only argument is that he did not know that his failure to do so carried criminal consequences. Such a defense does not negate a finding of a willful failure to file a tax return at the time or times required by law. *See, e.g., United States v. Wilson*, 214 F Supp 629, 630-31 (DC Del 1963) ("wilfulness" required to sustain convictions for failure to pay special wagering occupational tax established by showing defendant knew tax was

owed, even without showing that defendant also knew failure to comply carried criminal, not merely civil, sanctions). The accused committed a criminal act when he willfully violated 26 USC § 7203 by failing to file tax returns in the time or times required by law.[2]

██ ██    Not every criminal act reflects adversely on a lawyer's "fitness to practice law" within the meaning of DR 1-102(A)(2). As this court noted in *In re White*, 311 Or 573, 589, 815 P2d 1257 (1991), "[t]here must be some rational connection other than the criminality of the act between the conduct and the actor's fitness to practice law." *White* identified "pertinent considerations" with respect to whether a criminal act adversely reflects on a lawyer's fitness to practice law:

> "[T]he lawyer's mental state; the extent to which the act demonstrates disrespect for the law or law enforcement; the presence or absence of a victim; the extent of actual or potential injury to a victim; and the presence or absence of a pattern of criminal conduct."

*Id.* We turn to those considerations in determining whether the accused's violations of 26 USC § 7203 reflect adversely on his fitness to practice law.

As we discuss later in this opinion, a lawyer's mental state when engaging in particular conduct may be intentional, knowing, or negligent. In this instance, the accused knew that he had a duty to file tax returns timely, and he demonstrated that he knew how to request extensions of time for filing. His willful failure to file his tax returns at the time or times required by law was an intentional act. Moreover, the accused's violations of 26 USC § 7203 extended over three years. The accused's repeated failures to timely file tax returns, and his failure to take the steps necessary to be able to do so, reflect disrespect for the law. The accused's conduct was not "victimless," as his actions affected the federal government. Based on those considerations, we conclude that the accused's violations of 26 USC § 7203 reflect adversely on his fitness to practice law. Having found both that the

---

[2] Because the finding of a violation of 26 USC § 7203 is a crime that provides a basis for discipline, we need not decide whether the accused also committed a crime under the state provision, ORS 314.075(1). The Bar does not argue otherwise.

accused committed a criminal act by failing to file timely tax returns for the years 1992, 1993, and 1994, and having found that such actions reflect adversely on his fitness to practice law, we conclude that the accused violated DR 1-102(A)(2).

## B.   *ORS 9.460(1)*

■          The Bar alleges that the accused's failure to file timely tax returns for three years also violated ORS 9.460(1).[3] Although, in the past, this court has found that the same conduct can violate both the Code of Professional Responsibility and a provision of ORS chapter 9, *see, e.g., In re Gatti*, 330 Or 517, 8 P3d 966 (2000); *In re Allen*, 326 Or 107, 949 P2d 710 (1997); *In re Bridges*, 298 Or 53, 688 P2d 1335 (1984) (each so finding), such a finding generally has not served to enhance the sanction that this court has imposed for a violation or violations of the Code of Professional Responsibility. In this proceeding, the Bar does not argue that a finding that the accused violated ORS 9.460(1), in addition to DR 1-102(A)(2), for failing to file timely his tax returns, would enhance the sanction that we would impose for the accused's violation of the disciplinary rule. We conclude that a finding that the accused violated ORS 9.460(1) would have no practical effect on the sanction that we impose in this case. Therefore, we decline to address the Bar's charge that the accused violated that statute. *See In re Kimmell*, 332 Or at 487 (also declining to address Bar's charge of statutory violation after finding violation of Code of Professional Responsibility for same conduct because finding of statutory violation would have no practical effect on sanction).

## C.   *DR 5-101(A)(1)*

■          The next matter on review is the Bar's fourth cause of complaint. The Bar alleges that, by continuing to represent Rabon when the accused had a potential conflict of interest without providing proper written disclosure as defined by DR 10-101(B)(2), the accused violated DR 5-101(A)(1). DR 5-101(A)(1) provides, in part:

[3] ORS 9.460 provides, in part:

"An attorney shall:

"(1) Support the Constitution and laws of the United States and of this state[.]"

"Except with the consent of the lawyer's client *after full disclosure*,

"(1)   a lawyer shall not accept or continue employment if the exercise of the lawyer's professional judgment on behalf of the lawyer's client will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests. * * *""

(Emphasis added.) Under DR 10-101(B)(2), "full disclosure" includes the requirement that the lawyer recommend that "the recipient seek independent legal advice to determine if consent should be given and * * * contemporaneously *confirm[ ]* [such advice] *in writing*." (Emphasis added.)

As noted, the trial panel found that the accused violated DR 5-101(A)(1). On review, the accused concedes that he did not follow the letter of DR 10-101 because he did not advise Rabon in writing of his potential conflict of interest. According to the accused, however, the Bar has not proved by clear and convincing evidence that he violated the "spirit" of the full disclosure requirement because he took other steps to protect Rabon's interests, including having him consult with Houser. We disagree with the accused that the explicit wording of the rule, requiring notice to the client in writing, may be dispensed with so casually. *See In re Brandt / Griffin*, 331 Or 113, 135, 10 P3d 906 (2000) ("DR 10-101(B)(2) requires that an oral disclosure be 'confirmed in writing' "). We conclude that the accused violated DR 5-101(A)(1) by failing to inform Rabon in writing of the accused's potential conflict of interest.

## III.   SANCTION

■ ■ Having found that the accused violated DR 1-102(A)(2) and DR 5-101(A)(1), we turn to the appropriate sanction. This court follows a well-established methodology in determining the appropriate sanction for violating disciplinary rules. *See In re Gustafson*, 327 Or 636, 652-53, 968 P2d 367 (1998) (describing methodology). The Bar recommends a suspension of at least six months for the tax matters, but is satisfied with a public reprimand for the Rabon matter. The accused contends that he challenged the trial panel's recommendation that he receive a public reprimand

for his violation of DR 5-101(A)(1) only because the Bar has placed other aspects of the trial panel's decision at issue by seeking review in this court. We accept without further discussion the Bar's and the accused's agreement that a public reprimand is the appropriate sanction for the accused's violation of DR 5-101(A)(1) in the Rabon matter. We turn to the appropriate sanction for the accused's violation of DR 1-102(A)(2) in the tax matters.

## A. *Duty Violated*

The accused violated his duty to the public to maintain his personal integrity when he willfully violated 26 USC § 7203 by not filing his tax returns by the time or times required by law. American Bar Association's *Standards for Imposing Lawyer Sanctions* (1991) (amended 1992) (ABA Standards) 5.1. As noted in the commentary to ABA Standard 5.0:

> "The public expects the lawyer * * * to abide by the law; public confidence in the integrity of officers of the court is undermined when lawyers engage in illegal conduct."

ABA Standards at 36.

## B. *Mental State*

The ABA Standards recognize three mental states: intentional, knowing, and negligent. A lawyer acts intentionally by acting with the conscious objective or purpose of accomplishing a particular result. A lawyer acts knowingly by being consciously aware of the nature or attendant circumstances of the conduct, but not having a conscious objective to accomplish a particular result. A lawyer acts negligently by failing to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation. ABA Standards at 7.

In this case, the accused's mental state in violating 26 USC § 7203 was intentional. The accused was aware of his legal duty to file tax returns at the time required by law, and he repeatedly failed to do so. That the accused intended to file his tax returns at some later time does not mean that he did

not act intentionally when he failed to file his returns in a timely manner.

## C. *Actual or Potential Injury*

The accused's failure to file timely returns caused actual injury, because it hindered the federal government in its ability to administer the tax system and collect taxes.

## D. *Preliminary Sanction under ABA Standards*

The accused's misconduct implicates two ABA Standards. ABA Standard 5.11 provides, in part:

"Disbarment is generally appropriate when:

"(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

"(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

ABA Standard 5.12 provides:

"Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice."

## E. *Aggravating Factors*

There are two relevant aggravating circumstances in this proceeding. First, the accused engaged in a pattern of misconduct by filing tax returns in an untimely manner for three years. ABA Standard 9.22(c). Second, factoring in the Rabon matter, the accused committed multiple violations of the disciplinary rules. ABA Standard 9.22(d).

F. *Mitigating Factors*

There are several mitigating factors. First, the Bar became aware of the accused's misconduct in 1995, but it did not file a complaint until 1997, and the trial panel did not hear the matter until 1999. The case was not at issue for argument before this court until May 2001. The Bar concedes that it is responsible for the long delay in this proceeding. During the delay, the accused abandoned his solo law practice and joined a law firm. His disciplinary record since the events that led to this proceeding is unblemished. *See In re Unrein*, 323 Or 285, 288, 917 P2d 1022 (1996) (citing delay as particularly significant mitigating factor when four years elapsed between misconduct and court's decision, and no additional complaints had been filed). On the facts of this proceeding, the significant delay in the disciplinary process is an important mitigating factor in determining the appropriate sanction. ABA Standard 9.32(j).

There are other mitigating factors. The accused has no prior disciplinary record. ABA Standard 9.32(a). The accused has cooperated fully during the disciplinary proceedings, ABA Standard 9.32(e), and other penalties and sanctions have been imposed on the accused in the form of penalties and interest, ABA Standard 9.32(k).

Considering the duty violated, the accused's mental state, the injury caused, and aggravating and mitigating factors, it appears that a suspension from the practice of law would be the appropriate sanction in this proceeding. We turn to this court's case law to determine whether the Bar's recommendation of a six-month suspension is appropriate.

G. *Case Law*

This court never has been sanguine about a lawyer's failure to pay taxes. *See, e.g., In re Morris*, 215 Or 180, 182, 332 P2d 885 (1958) (warning lawyers that court will not be lenient in discipline of lawyers who fail to file tax returns in compliance with law). In *In re DesBrisay*, 288 Or 625, 629-30 n 2, 606 P2d 1148 (1980), which was decided before this court began to follow the ABA Standards methodology, this court described the range of sanctions that it had imposed in situations in which lawyers had failed to file tax returns:

"The ethical violations in each case and our dispositions of the proceedings are as follows: *In re Thomas Graham Walker*, 240 Or 65, 399 P2d 1015 (1965) (the accused was convicted of failing to file a return for the year 1958 and was suspended for two years); *In re James L. Means*, 218 Or 480, 342 P2d 1119 (1959) (the accused pleaded guilty to two counts of failing to file income tax returns. He had been disciplined before on similar charges and was therefore permanently disbarred); *In re LeRoy L. Lomax*, 216 Or 281, 338 P2d 638 (1959) (the accused pleaded guilty to two charges of failing to file income tax returns and was suspended from practice for one year); *In re Maurice C. Corcoran*, 215 Or 660, 337 P2d 307 (1959) (a suspension of 18 months was imposed when the attorney pleaded *nolo contendere* to two counts of failing to file tax returns and failed to file returns in two other years); *In re Richard R. Morris*, 215 Or 180, 332 P2d 885 (1958) (the attorney pleaded guilty to three charges of failing to file returns and was suspended for one year); *In re McKechnie*, 214 Or 531, 330 P2d 727 (1958) (McKechnie was suspended from the practice of law for six months after pleading guilty to failing to file tax returns in two consecutive years); *In re Claude M. Johns, Jr.*, 212 Or 587, 321 P2d 281 (1958) (Johns pleaded guilty to two counts of failing to file tax returns and admitted that he also failed to file returns in five earlier years. He was suspended for one and one-half years); *In re Franz E. Wagner*, 210 Or 457, 311 P2d 751 (1957) (the accused was suspended for one year after he pleaded guilty to three counts of failing to file tax returns); *In re Means*, 207 Or 638, 298 P2d 983 (1956) (Means pleaded guilty to two counts of failing to file federal tax returns and did not dispute the bar's allegation that he had failed to file returns 'over a period of years' prior to the years covered by his guilty pleas. Means was suspended from the practice of law for six months)."

The court then noted that, although suspensions of six months to two years were the appropriate sanction in most cases involving a lawyer's failure to file taxes, a four-year suspension was warranted in DesBrisay's case because of extenuating circumstances and the accused's cavalier attitude. *DesBrisay*, 288 Or at 630-32.

In this proceeding, unlike the cases summarized above, the accused did not fail to pay his taxes altogether. Neither did he seek to evade paying them or falsify his tax

obligations. *See In re Pennington*, 220 Or 343, 348 P2d 774 (1960) (disbarring accused for felony of filing false and fraudulent returns; distinguishing the seriousness of such misconduct from misconduct in failure-to-file cases). The accused paid the penalties and interest that accrued because of his late filings. The accused's misconduct in this proceeding stemmed from his errors in judgment in failing to keep copies of the records that he sent to Hohman and in persisting to rely on her services even after it had become evident that she was not able to provide the bookkeeping service that he needed. Although we do not condone those errors, they do not suggest the same level of disregard of legal duties that was present in the cases summarized in *DesBrisay* and for which lengthy suspensions from the practice of law were necessary to protect the public.

Nonetheless, the willful failure to file tax returns in a timely manner warrants a significant suspension from the practice of law. Moreover, repeated failure to do so, and violation of another rule as well—in this instance, DR 5-101(A)(1)—ordinarily would justify even a longer period of suspension. Under other circumstances, we might agree with the Bar that a six-month suspension, or more, would be the appropriate sanction. In this proceeding, however, the mitigating circumstances outweigh the aggravating circumstances. *See In re Wittemyer*, 328 Or 448, 462, 980 P2d 148 (1999) (appropriate sanction in discipline proceedings always depends on facts and circumstances of that proceeding). The more than five-year delay, coupled with the accused's unblemished disciplinary record in the intervening years, suggest that a six-month suspension is not appropriate here. We conclude that suspending the accused from the practice of law for 60 days is the appropriate sanction.

The accused is suspended from the practice of law for a period of 60 days, commencing 60 days from the date of filing of this decision.