IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| BRUCE C. HUMMEL | ) | |
| and CAROL S. HUMMEL, | ) | |
| | ) | |
| Plaintiffs, | ) | TC-MD 130469N |
| | ) | |
| v. | ) | |
| | ) | |
| UNION COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **FINAL DECISION** |

The court entered its Decision in the above-entitled matter on January 31, 2014. The court did not receive a request for an award of costs and disbursements (TCR-MD 19) within 14 days after its Decision was entered. The court's Final Decision incorporates its Decision without change.

Plaintiffs appeal from Defendant's notice of omitted property assessment, adding the value of omitted property for the 2008-09 through 2012-13 tax years to property identified as Account 8984 (subject property) and charging interest under ORS 311.229(2). (Ptfs' Compl at 2-3.) In this appeal, Plaintiffs challenge only the interest added under ORS 311.229(2). (*See id.* at 1.) A trial was held by telephone on December 4, 2013. Plaintiff Bruce C. Hummel (Hummel) appeared and testified on behalf of Plaintiffs. Jared D. Boyd, Deputy District Attorney, Union County District Attorney's Office, appeared on behalf of Defendant. Linda L. Hill (Hill), Union County Assessor/Tax Collector, testified on behalf of Defendant. Plaintiffs' Exhibits 1 through 5 and Defendant's Exhibits A through L were received without objection. Plaintiffs objected to the relevance of Defendant's Exhibit M, a letter from Hummel's counsel in an unrelated matter. Defendant's Exhibit M was not admitted because Hummel stipulated to the

/ / /

relevant content of the exhibit, stating that it was his intent beginning in 2006 to use the subject property as a dwelling, although Plaintiffs constructed the subject property in several phases.

## I. STATEMENT OF FACTS

Prior to Defendant's omitted property assessment, the subject property was identified in Defendant's records as "an unimproved, bare land parcel consisting of 3,674.32 acres of specially assessed farmland. The subject property is located on Thief Valley Road in a sparsely populated, remote part of Union County." (Def's Ex A at 1.) Hill testified that Defendant became aware of an improvement on the subject property in February 2013 due to a telephone call from the sheriff's office requesting information on the subject property. (*See id.*) On February 27, 2013, Hill and others from Defendant's office visited the subject property and observed "[a] large multi-purpose building," which they viewed from the exterior and measured. (*Id.*; *see also* Def's Ex B (photographs from inspection).) Hill observed "evidence * * * that a portion of the building was used as a dwelling" and "that the building had power, heat, plumbing, a water source and a septic system." (Def's Ex A at 1.)

Hill testified that she reviewed aerial photographs of the subject property from 2006 and 2009 and found that the structure was added during that time period. (*See* Def's Ex D at 2 (aerial photo from 2009).) She testified that she sent a letter of intent to add omitted property to Plaintiffs in April 2013 and subsequently scheduled a meeting with Plaintiffs at their request on May 29, 2013. Hill testified that she inspected the subject property's interior on May 30, 2013.

Hill testified that, based on several factors, she determined Plaintiffs knowingly avoided paying property taxes on the subject property beginning with the 2008-09 tax year and, as a result, decided to charge Plaintiffs interest on the omitted property. During the May 29, 2013, meeting, the parties discussed Hill's decision to charge Plaintiffs interest. (Def's Ex A at 1.)

Hill stated that she listened to Plaintiffs' explanation, but did not change her decision to charge Plaintiffs interest. (*See id.* at 2-3.)

Hill testified that she considered several factors in determining that Plaintiffs knowingly avoided paying property taxes. First, Hill testified Plaintiffs received property tax statements with no value for "structures" listed and Plaintiffs should have noticed that omission. She testified that a reasonable person in Plaintiffs' situation would have known that property taxes were due on the subject property structure. Defendant drew the court's attention to the fact that its property tax statements include separately stated values for "land" and "structures." (*See, e.g.,* Def's Ex G at 1, H at 1.) Second, Hill testified that Plaintiffs received a letter from the Planning Department notifying them of several requirements for constructing a dwelling, but Plaintiffs did not comply with those requirements. Third, Hill testified that Plaintiffs should have known that building permits were required for the subject property and should have applied. (*See* Def's Ex A at 2-3.)

Defendant provided a letter, dated June 13, 2006, from the director of the Union County Planning Department addressed to Plaintiffs and to Ralph Graven, who was authorized by Plaintiffs "to sign any and all documents required for the permitting process to construct a dwelling on [Plaintiffs'] property near Thief Valley Reservoir." (Ptfs' Ex 4; Def's Ex I.) Hummel testified that Plaintiffs received a copy of the June 13, 2006, letter from the Planning Department. The letter identifies "Approval Conditions," including the following:

> "Upon request a land use compatibility statement can be provided by this office to accompany your application for a[n] Oregon Department of Environmental Quality (DEQ) subsurface sewage disposal permit. Once DEQ approval is obtained you may pursue the proper building or manufactured home setup permits with the La Grande/Union County Building Department. In addition, you will need to contact this office to obtain a rural address."

(Def's Ex I at 2.)

Hill testified that Plaintiffs failed to comply with the approval conditions identified in the Planning Department's letter. (*See* Def's Ex A at 2-3.) She testified that, although the subject property had a septic system, Plaintiffs did not obtain a sewage disposal permit from DEQ. (*See id.* at 2.) Hill reported that she contacted the Union County Building Department and found that "no building permits had been issued for [the subject] property nor was a Farm Agriculture Building Exemption Certification filed." (*Id.*) "Plaintiff[s] failed to apply for a rural address upon constructing a dwelling[.]" (*Id.* at 3.)

Hummel testified that Plaintiffs began constructing the subject property in 2006 and finished in 2008. (*See* Def's Ex F at 1 (building plans).) He testified that Plaintiffs' initial plan was to construct the subject property as an agricultural structure and eventually expand it into a house for Plaintiffs' retirement. Hummel testified that the phases of construction moved more quickly than Plaintiffs initially planned because Plaintiffs received unexpected funds and because Hummel was able to purchase building materials at cost from an employer. Defendant noted that Plaintiffs' building plans for the subject property, dated September 8, 2006, clearly refer to the "house." (*Id.*) Hummel testified that, as early as 2006, Plaintiffs intended to use the subject property as a house, but not during the first two phases of construction.

The subject property's building plans include rooms labeled "shop," "tool room," and "recreation center." (Def's Ex F at 1.) Hummel testified that the "recreation center" is a kitchen and bathroom that Plaintiffs intended to use for potlucks and parties at the end of cattle season, as is customary in the cattle ranching business. Hill testified that she inspected the subject property's interior on May 30, 2013, and observed that the "shop" is a living room, the "tool room" is a bedroom, and the "recreation center" is a kitchen. (*See id.*) She testified that the subject property includes two bathrooms and heated floors in the living area.

Hummel testified that he was a licensed building contractor in Washington prior to retiring. He testified that he is generally familiar with the concept of applying for and obtaining building permits. Hummel testified that his understanding from a conversation in 2005 with David Black (Black), Union County Building Inspector, was that no building permits would be required for the subject property until the dwelling was constructed in the third phrase. (Ptfs' Ex 3 (Hummel's notes from the conversation).) Hummel testified that Black did not mention that a "Farm Agriculture Building Exemption Certification" form was to be filed by Plaintiffs and Hummel was unaware of the requirement. (*See* Def's Ex J at 1.)

Hummel testified that Plaintiffs use solar energy at the subject property, so no electric connection was required. He testified that, as of the date of trial, Plaintiffs had filed an application with DEQ for their septic system. (*See* Ptfs' Ex 5 (application dated Aug 22, 2013).) Hummel testified that Plaintiffs did not obtain a rural address for the subject property because they did not need one. He testified that, although he began living at the subject property in 2009, his wife remained at their home in Washington and received mail there. Hill testified that a rural address is required for reasons other than receipt of mail, including the provision of emergency services.

Hummel testified that he receives 10 Oregon property tax statements each year, five for properties in Baker County and five for properties in Union County, including the subject property. (Ptfs' Ex 2.) He testified that he personally reviewed Plaintiffs' property tax statements; he did not turn them over to a certified public accountant for review and payment. Hummel testified that, each year, he adds up the total property taxes due for each county and mails checks to the county assessors. (*See id.* at 1.) He testified that Plaintiffs' property tax statements did not noticeably increase for the 2008-09 tax year or any subsequent year. Hummel

testified that he expected taxes to increase on the subject property after the structure was completed, but he made no effort to contact Defendant to find out why the taxes did not increase.

Hummel testified that Plaintiffs agree with the omitted property assessment, but disagree with Defendant's decision to charge interest. He testified that Plaintiffs did not "willfully" attempt to evade payment of property taxes; rather, it was a "by-product" of their other actions.

## II. ANALYSIS

Plaintiffs challenge Defendant's decision to impose interest under ORS 311.229(2)[1] based on Defendant's determination that the omission of the subject property from the tax and assessment rolls "was due to a willful attempt to evade the payment of property taxes." (Def's Ex A at 3.) ORS 311.229(2) states, in part, that interest on an omitted property assessment shall be added "[w]hen it appears to the satisfaction of the assessor that the omission of the property was due to a willful attempt to evade the payment of taxes on the property * * *." The parties dispute whether Plaintiffs willfully attempted to evade the payment of property taxes.

A.  *Standard of review and burden of proof*

This court has determined that it reviews omitted property assessments *de novo*, rather than limiting its review to abuse of discretion. *See New Beginnings Christian Center, Inc. v. Multnomah County Assessor* (*New Beginnings*), TC-MD 130347D at 3, 5 (Jan 13, 2014). That is, "to decide whether an assessor's addition of omitted property corrects the tax roll, the court must consider the facts and make its own determination. To do so the court looks at all evidence in the record, not just what was known to the assessor at the time of its determination." *Id.* at 5. Although this matter originated with an omitted property assessment, Plaintiffs do not challenge the underlying assessment, only Defendant's decision to impose interest.

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

ORS 311.229(2) states that interest shall be imposed "[w]hen it appears to the satisfaction of the assessor that the omission of the property was due to a willful attempt to evade the payment of taxes[.]" The court concludes that here, as in *New Beginnings*, the court's review is *de novo*. This court has used an abuse of discretion standard of review in some cases, but only when the legislature has used clear language indicating its intent to render an agency's decision-making a matter of discretion. *See ADC Kentrox v. Dept. of Rev.*, 19 OTR 91, 95-96 (2006). Such an exception only applies when the statute contains an "express grant of discretionary decision-making power[.]" *See id.* at 96. The court concludes that pertinent language in ORS 311.229(2) directs the assessor to make a factual finding as to whether the taxpayer willfully attempted to evade taxes. The statute does not include express language indicating that the assessor's determination is discretionary. Thus, the court reviews Defendant's determination *de novo*.

Plaintiffs have the burden of proof and must establish their case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof[.]" *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990).

B.      *Willful attempt to evade the payment of taxes*

Under ORS 311.229(2), interest shall be imposed only when the omission of the subject property was due to "willful attempt to evade the payment of taxes." The statute does not define "willful" and no Oregon court has previously determined the meaning of the term as it is used in ORS 311.229(2).[2]

---

[2] *But cf. Miller v. Dept of Rev.*, 16 OTR 4, 8 (2001) (comment *in passim* that under ORS 311.229 taxpayer is not charged interest for addition of omitted barn to roll).

"In interpreting a statute, the court's task is to discern the intent of the legislature." *PGE v. Bureau of Labor and Industries* (*PGE*), 317 Or 606, 610, 859 P2d 1143 (1993); ORS 174.020. Legislative intent is determined first from the text and context of the statute. *PGE*, 317 Or at 611; *State v Gaines* (*Gaines*), 346 Or 160, 171, 206 P3d 1042 (2009). "In trying to ascertain the meaning of a statutory provision, * * * the court considers rules of construction of the statutory text that bear directly on how to read the text. Some of those rules are mandated by statute, including * * * the statutory enjoinder 'not to insert what has been omitted, or to omit what has been inserted.' " *PGE*, 317 Or at 611, citing ORS 174.010. "[W]ords of common usage typically should be given their plain, natural, and ordinary meaning." *Id*. "[T]he context of the statutory provision at issue * * * includes other provisions of the same statute and other related statutes * * *." *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998).

"[A]fter examining text and context[,]" the court may consider legislative history that "appears useful to the court's analysis." *Gaines*, 346 Or 172; *see also* ORS 174.020(3) (stating that "[a] court may limit its consideration of legislative history to the information that the parties provide to the court. A court shall give the weight to the legislative history that the court considers to be appropriate"). Legislative history may include an examination of bill drafts. *See, e.g., Beiswenger v. PSRB*, 192 Or App 38, 48-50, 84 P3d 180 (2004) (reviewing the "original version of the bill [that] did not exclude 'personality disorders' from the 'mental disease[s] or defect[s]' " and subsequent revisions to the bill before the final draft). "If the legislature's intent remains unclear after examining text, context, and legislative history, the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Gaines*, 346 Or at 172.

/ / /

1.      *Text and context*

ORS 311.229 does not define the term "willful."  Black's Law Dictionary defines "willful" as "[v]oluntary and intentional, but not necessarily malicious."  *Black's Law Dictionary* 1593 (7th ed 1999).  Webster's dictionary defines "willful" as "done deliberately, not accidental or without purpose, intentional, self-determined."  *Webster's Third New Int'l Dictionary* 2617 (unabridged ed 2002).

The term "willful" is used only a few times in Oregon taxation statutes, typically in the context of violations and penalties.  *See, e.g.*, ORS 305.990; ORS 308.990; ORS 309.990; ORS 311.990.  However, none of those statutes include the phrase "willful attempt to evade," as appears in ORS 311.229(2).  The term "willfully" is used in both the civil and criminal penalty statutes of the Internal Revenue Code (IRC).  IRC section 6672 provides for civil penalties where a taxpayer "willfully attempts in any manner to evade or defeat any such tax."  IRC section 7201 makes one who "willfully attempts in any manner to evade or defeat any tax imposed by this title" guilty of a felony.

2.      *Legislative history*

The pertinent language of ORS 311.229(2) was originally enacted by House Bill (HB) 34 in 1949.  The original language in the 1949 bill is similar to that in the 2011 statute:

> "When it shall appear to the satisfaction of the officer making such addition of property that the omission of such property was due to a willful attempt to evade the payment of taxes on such property, then interest at the rate of two-thirds of 1 per cent per month, or fraction thereof, shall be added to the amounts so charged * * *."

Or Laws ch 442 § 1 (1949).

According to the 1949 legislative journal, the original draft prepared by the House did not include language regarding "a willful attempt to evade" taxes; it simply imposed interest on all

taxes added to the roll. The language conditioning interest on finding a willful attempt to evade is the result of a Senate amendment that passed through two drafts. In the Senate's first draft, interest was to be imposed where either willful neglect or a willful attempt to evade was found. The second draft removed "willful neglect" as a condition for imposing interest. The second draft eventually became the law.

3.    *Meaning of "willful attempt to evade" in ORS 311.229(2)*

Based on the statutory context and the available legislative history, the court concludes that the phrase "willful attempt to evade" in ORS 311.229(2) has the same meaning as in federal felony income tax evasion; namely, a "voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 US 192 (1991); *In re Lawrence*, 332 Or 502, 509, 31 P3d 1078 (2001).[3] The intent to violate a known duty suffices for the "evil motive" some courts previously described as included in the concept of willfulness. *See id*.

Under the IRC, *willful* has its ordinary meaning in both felony and misdemeanor statutes, and it is likely that it has the same meaning in civil penalty statutes as well. *United States v. Bishop*, 412 US 346, 360, 93 S Ct 2008, 36 L Ed 2d 941 (1973) (Court "promotes coherence in the group of tax crimes" by interpreting 'willfully' consistently between statutes); *United States v. Platt* (*Platt*), 435 F2d 789, 794 (2d Cir 1970). In *Platt*, Judge Friendly reasons that the difference between a misdemeanor and a civil infraction is not in the "willfulness" of the taxpayer, but in the material elements of the offense. *Platt*, 435 F2d at 794. For example, intentional failure to file a return might be willful conduct, whereas intentional failure to pay a tax might not be willful if a taxpayer is unable to pay. *Id*. Judge Friendly would, therefore, give

---

[3] The court in *In re Lawrence*, 332 Or 502, 508, considered alleged violations under both IRC section 7203 and also under ORS 314.075(1). IRC section 7203 included the language "willfully fails to pay such estimated tax or tax." The Oregon statute at issue did not use the term "willful," but instead referred to the "intent to evade any requirement of any law imposing taxes upon or measured by net income[.]" *Id.*

the term its ordinary meaning in both sets of statutes, noting that the government faces a significantly higher standard of proof if it chooses to prosecute for a crime rather than impose a civil penalty. *Id*.

Given the legislative history and the similarity of wording between ORS 311.229(2) and IRC section 7201, it is reasonable to conclude the legislature did not intend to distinguish a sense of "willful" apart from its sense in the criminal statute. The phrase "willful attempt to evade" is similar to the wording of IRC section 7201 and dissimilar from the civil penalty statutes in either the IRC or the Oregon statutes. Additionally, the Oregon bill including the language "willful attempt to evade" was introduced and passed in 1949, six years after the U.S. Supreme Court decided its landmark felony tax evasion case, *Spies v. United States* (*Spies*), 317 US 492, 63 S Ct 364, 87 L Ed 418 (1943). A crucial issue in *Spies* was the distinction between failure to pay a tax (which is presumed to be due to "willful neglect") and "willful attempt to defeat and evade" a tax. *Spies*, 317 US at 497-99. The similarity in wording suggests that the Oregon legislature may have contemplated both IRC section 7201 and the Supreme Court's opinion interpreting it when it first enacted the language "willful attempt to evade."

Because the Oregon legislature considered and rejected imposing interest for property omitted due to a taxpayer's willful neglect, it is worth noting the Supreme Court's analysis in *Spies* of the distinction between "willful but passive neglect" and an "attempt to defeat and evade" taxes. Although the Court's analysis relied in part on the gravity of the felony offense as opposed to a misdemeanor, the Court found the word "attempt" implied an affirmative action on the part of the taxpayer. The court reasoned as follows:

> "The difference between the two offenses, it seems to us, is found in the affirmative action implied from the term 'attempt,' as used in the felony subsection. * * * We think that in employing the terminology of attempt to embrace the gravest of offenses against the revenues Congress intended some

willful commission in addition to the willful omissions that make up the list of misdemeanors. Willful but passive neglect of the statutory duty may constitute the lesser offense, but to combine with it a willful and positive attempt to evade tax in any manner or to defeat it by any means lifts the offense to the degree of felony."

*Spies*, 317 US at 498-99. The Court gave examples:

"By way of illustration, and not by way of limitation, we would think affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal."

*Id*. at 499.

C.      *Whether Plaintiffs' actions constituted a willful attempt to evade the payment of taxes*

The court must now determine whether Plaintiffs' actions constitute a "willful attempt to evade the payment of taxes" on the omitted property, keeping in mind that Plaintiffs have the burden of proof in this matter and must establish their case by a preponderance of the evidence. The court concluded that "willful attempt to evade" in ORS 311.229(2) refers to a "voluntary, intentional violation of a known legal duty." The court is persuaded that Plaintiffs knew of their legal obligation to pay property taxes on the subject property. Hummel testified that he personally reviewed Plaintiffs' property tax statements each year and made payments.

The court has also concluded that a "willful attempt to evade" requires more than "willful neglect," a phrase that was considered and rejected by the legislature in enacting the statutory predecessor to ORS 311.229(2). The opinion in *Spies* instructs that the word "attempt" implies an affirmative action and provided examples of conduct that constitute an "attempt to evade." One such example, especially relevant here, is the "handling of one's affairs to avoid making the

/ / /

records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." *Spies*, 317 US at 499.

Hummel testified that Plaintiffs' evasion of property taxes was a by-product of his actions and omissions, not the purpose of those actions and omissions. The court disagrees. Hummel is experienced in construction and was aware that building permits were required for the subject property once it became a dwelling in the third phase of construction. No explanation was provided for Plaintiffs' failure to obtain necessary building permits. Hummel's testimony that the subject property required no building permits during the first two phases of construction fails to explain why he did not obtain building permits when they became required during the third phase of construction. Moreover, the subject property building plans mislabel several rooms as a "shop," "tool room," and "recreation center," that were, in fact, a kitchen, living room, and bedroom. As with the required building permits, Hummel was aware that DEQ permits were required for the septic system, yet failed to file an application until 2013. The court is not persuaded that the purpose or intent of those actions and omissions was anything other than avoiding the discovery and taxation of the subject property by Defendant.

Plaintiffs have failed to prove by a preponderance of the evidence that they did not willfully attempt to evade the payment of property taxes on the subject property.

III. CONCLUSION

After careful consideration, the court concludes that Plaintiffs failed to prove by a preponderance of the evidence that they did not willfully attempt to evade the payment of property taxes within the meaning of ORS 311.229(2). Now, therefore,

/ / /

/ / /

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.

Dated this ___ day of February 2014.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.*

*This Final Decision was signed by Magistrate Allison R. Boomer on February 18, 2014. The Court filed and entered this Final Decision on February 18, 2014.*